**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Valerie Moore, | No. CV-22-01938-PHX-JAT (JFM) |
| Plaintiff, | **ORDER** |
| v. | **(UNDER SEAL)** |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court is a Motion for Summary Judgment ("Motion") filed by the following Defendants: the State of Arizona; David Shinn, the prior director of the Arizona Department of Corrections, Rehabilitation, and Reentry ("ADCRR"); and Ryan Thornell, the current director of the ADCRR (collectively "Defendants").[1] (Doc. 111). Defendant Vargas is not a movant.

## I.    BACKGROUND

Plaintiff's claims arose while Plaintiff was confined at the Arizona State Prison Complex-Perryville. (Doc. 126 at 4 ¶ 33 (citing the complaint)). Plaintiff alleges that on or about August 1, 2021, Defendant Carlos Vargas, an ADCRR officer, took Plaintiff out of her assigned cell on the pretense of talking to her, took her to an empty cell, and sexually

---

[1] As previously noted by the Court:
> Defendant Shinn was named in both his individual and official capacity. (Doc. 1-4 ¶ 6.) Defendant Shinn has retired as ADCRR Director; therefore, the Court will automatically substitute his successor, Ryan Thornell, as a Defendant in his official capacity. *See* Fed. R. Civ. P. 25(a). Shinn will remain in this action as a Defendant in individual capacity.

(Doc. 99 at 1).

1   assaulted her. (Doc. 126 at 6 ¶ 51 (citing Exhibit C, sealed)).

2       Plaintiff, through counsel, initiated this action in Maricopa County Superior Court

3   and Defendants removed the action to federal court. (Doc. 1, No. CV2022-009779). In

4   Count One of the complaint, as captioned in Plaintiff's response, Plaintiff asserts a state

5   law tort claim of intentional infliction of emotional distress via sexual exploitation and

6   sexual harassment. (Doc. 1-4 at 8-9). In Count Two, Plaintiff asserts state law claims of

7   retaliation and wrongful detention against the State of Arizona. (Doc. 1-4 at 9). And in

8   Count Three, Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of the First,

9   Eighth, and Fourteenth Amendments against Defendants Shinn and Vargas. (Doc. 1-4 at

10   9-10). Plaintiff seeks damages, attorneys' fees, and costs. (Doc. 1-4 at 10).

11       Defendants move for summary judgment on all claims against them. (Doc. 111).

12   Plaintiff responded. (Doc. 125). Defendants replied. (Doc. 133). Defendant Vargas joined

13   parts V and VI of Defendants' reply. (Doc. 134).

14   **II.   LEGAL STANDARD**

15       Summary judgment in favor of a party is appropriate when that party "shows that

16   there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter

17   of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

18   (1986). The movant must first establish that there is no genuine dispute of material fact and

19   that, based on the undisputed material facts, the movant is entitled to judgment as a matter

20   of law. *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmovant to demonstrate

21   the existence of any dispute of material fact. *Id.* at 323-24. The nonmovant "must do more

22   than simply show that there is some metaphysical doubt as to the material facts" by

23   "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'"

24   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting

25   Fed. R. Civ. P. 56(e) (1963)). There is a genuine issue of material fact if the disputed issue

26   of fact "could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357

27   F.3d 1072, 1075 (9th Cir. 2004). Material facts are those "facts that might affect the

28   outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court

must "construe all facts in the light most favorable to the non-moving party." *Ellison*, 357 F.3d at 1075-76 (citation omitted). However, the nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact that would defeat the motion for summary judgment. *Anderson*, 477 U.S. at 247-48.

### III.    Analysis

#### a. Count One: Sexual Exploitation/Sexual Harassment; Intentional Infliction of Emotional Distress

In Count One, as captioned in Plaintiff's response, Plaintiff asserts a state law tort claim of intentional infliction of emotional distress via sexual exploitation and sexual harassment. (Doc. 125 at 6; *see also* Doc. 1-4 at 8-9). Any cause of action arising out of a tort committed by a prison director, officer, or employee while acting within the course and scope of their employment may run only against the State. Ariz. Rev. Stat. § 31-203.01(F). Thus, because this claim arises out of a tort allegedly committed by Defendant Vargas, an ADCRR officer, while he was allegedly acting within the course and scope of his employment, this claim runs only against the State of Arizona ("State").[2] The State argues that it is entitled to summary judgment on Count One because it is immune or, alternatively, because it is not vicariously liable.

#### i. Immunity

To prevail on summary judgment for Count One on a theory of immunity, the State must establish that it is indisputably immune as a matter of law. The State is immune from "losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the

---

[2] Previously, Defendant Vargas moved for summary judgment on Count 1. (Doc. 48). In responding to that motion, Plaintiff made clear that Plaintiff was only bringing a claim against the State in Count 1 and was not bringing a claim against Defendant Vargas individually. (Doc. 53). Consistent with Plaintiff's statements in her response, the Court clarified that "To the extent that there is any confusion as to whether Defendant Vargas is an individual Defendant in Count One, this Order clarifies that he is not." (Doc. 99 at 5). Notably, the State can be liable for Defendant Vargas' conduct under § 31-201.01(F) only if Defendant Vargas was acting within the course and scope of his employment. If Defendant Vargas was determined to not be acting in the course and scope of his employment, then § 31-201.01(F) does not apply, and Defendant Vargas could be personally liable. *See, e.g.*, *Marie v. Szapiro*, 804 F. App'x 869, 870-71 (9th Cir. 2020). However, any such alternative theory of liability against Defendant Vargas personally was expressly waived/disclaimed by Plaintiff in Doc. 53 and is not at issue in this case.

1  public employee's propensity for that action." Ariz. Rev. Stat. § 12-820.05. The parties

2  primarily dispute whether Defendant Vargas had a "propensity" for unlawful sexual

3  conduct with an inmate, in violation of A.R.S. § 13-419(A), (C), and whether the State had

4  knowledge of such a propensity.[3]

5  **1. Facts**

6  Both of the parties address two "incidents," or "instances," relevant to the inquiry

7  of whether Defendant Vargas had a "propensity" for unlawful sexual conduct with an

8  inmate. The first incident was in October 2019,[4] when an inmate reported that a separate

9  officer (not Defendant Vargas) "had touched her buttocks during a security check."[5] (Doc.

10  126 at 10 ¶ 73 (citing Exhibit B, sealed)). Defendant Vargas subsequently denied the

11  inmate's request to volunteer as a "rec porter." (Doc. 138 at 2 ¶ 4 (citing Exhibit C)). The

12  parties include varying accounts as to why Defendant Vargas denied the inmate's request.[6]

13  Regardless, it is undisputed that a lieutenant instructed Defendant Vargas "to fill out a

14  report" regarding the request denial. (Doc 138 at 2 ¶ 3 (citing Exhibit C); Doc 126 at 1 ¶

15  3). Defendant Vargas either "did not fill out [the] report as quickly as the lieutenant had

16  asked him to," (Doc. 138 at 2 ¶ 3 (citing Exhibit C)), or "refused to complete the report

17  even after a lieutenant and the deputy warden instructed him to do so," (Doc. 126 at 1 ¶ 3

18  ---

[3] Although Defendants argue other points in their Reply, in their Motion, Defendants
19  "[p]ut[] aside . . . whether Plaintiff can prove her sexual assault claim." (Doc. 111 at 4).
[4] The parties agree that Defendant Vargas has no relevant history prior to when he began
20  employment at the prison for the second time. (Doc. 138 at 1-2; Doc. 126 at 1-2).
[5] It is undisputed that the incident involving the other officer was closed as unfounded.
21  (Doc. 138 at 2 ¶ 5; Doc. 126 at 2 ¶ 5).
[6] According to Plaintiff, the inmate reported that Defendant Vargas said it was "because of
22  what she did" and he "told her that he was not happy with her . . . because she had reported
the other officer." (Doc. 126 at 2 ¶ 4, 10 ¶ 74 (quoting Exhibit B, sealed)). Defendants state
23  that "[Defendant] Vargas allegedly responded that he was not comfortable with the request
because the inmate had made a sexual misconduct allegation against another officer the
24  prior day." (Doc. 138 at 2 ¶ 4 (citing Exhibit C)). It is undisputed that later, [w]hen
interviewed, [Defendant] Vargas explained that he told the inmate he was not comfortable
25  with the request because the inmate was not on the master pass." (Doc. 138 at 2 ¶ 5 (citing
Exhibits C and D)). According to Plaintiff:
26      [Defendant] Vargas denied making retaliatory statements to the inmate. However,
        he told investigators that he refused to allow the inmate to work a job as a porter
27      because he did not feel "comfortable with that, referring to her working as a porter
        in [another inmate's] absence." Vargas told investigators that the inmate must have
28      interpreted his statements as an indication that he was "attempting to retaliate
        against her."
(Doc. 126 at 10 ¶ 75 (quoting Exhibit B, sealed)).

(citing Exhibit A)). In the end, "[Defendant] Vargas received a Letter of Reprimand for insubordination arising from this incident." (Doc. 126 at 10 ¶ 78 (citing Exhibit A); Doc. 138 at 2 ¶ 3 (citing Exhibit C); Doc. 126-1 (copy of the letter of reprimand)).

The second "incident" was in April 2020, when "an inmate made a [Prison Rape Elimination Act ("PREA")] complaint against [Defendant] Vargas . . . [and] reported that [Defendant] Vargas touched her breasts and buttocks . . . [on two separate occasions] while he was entering and exiting the [prison van]." (Doc. 126 at 10 ¶ 79 (citing Exhibit P, sealed); *see also* Doc. 138 at 2 ¶ 7 (citing Exhibit C)). Defendant Vargas denied these incidents. (Doc 126 at 11 ¶ 80 (citing Exhibit P, sealed)). The investigation into this allegation was "closed as unsubstantiated, finding 'no evidence to prove or disprove a sexual assault occurred.'" (Doc. 138 at 2 ¶ 8 (citing Exhibits C and E); Doc 126 at 2 ¶ 8). The parties dispute whether Defendant Vargas was disciplined for this incident.[7]

The parties ultimately draw opposite conclusions regarding whether these incidents, taken together, show that Defendant Vargas had a "propensity" for unlawful sexual conduct with an inmate that the State knew of. The State concludes that "[a]s a matter of law, this record fails to show that [Defendant] Vargas had a propensity to engage in sex with an inmate, or that the State had any actual knowledge of such a propensity" because "the record contains only a single reprimand for insubordination for not timely submitting a report, and a single unsubstantiated accusation that [Defendant] Vargas inappropriately touched an inmate as he was entering or exiting a prison van."[8] (Doc. 111 at 4).

Plaintiff concludes that these incidents show the opposite: that "[t]he State was

---

[7] Defendants classify the incident as an "instance[] of discipline," (Doc. 138 at 2 ¶ 3), but Plaintiff states that "it does not appear [Defendant Vargas] was disciplined for the April 2020 incident," (Doc. 126 at 1).
[8] The Court finds *Goff* and *Doe*, cited by Defendants, inapposite because those cases both included prior acts dissimilar to the harm suffered by the plaintiff and, here, there is a prior claim that Defendant Vargas committed unlawful sexual conduct with an inmate. *See Goff v. Arizona*, 526 F. Supp. 3d 551, 568 (D. Ariz. 2020) (finding State did not have knowledge of defendant's propensity for sexual assault where defendant solicited a prostitute outside of work and lied about it); *Doe v. Dickenson*, 615 F. Supp. 2d 1002, 1017 (D. Ariz. 2009) (finding "[e]vidence that [the defendant] helped around the school, helped students get to and from school, and helped students finance field trips simply [did] not . . . give rise to knowledge that [the defendant] had a propensity to molest children."). The Court finds the conduct alleged in the April 2020 incident to be more similar to the harm alleged to have been suffered by Plaintiff in this case than the similarity of the conduct in *Goff* or *Doe*.

aware of [Defendant] Vargas' propensity to commit unlawful sexual conduct with inmates" because (1) as of October 2019, the State had notice of Defendant Vargas' "attitude toward female inmates (and his female supervisor), his disdain for inmates who reported staff sexual misconduct, and his willingness to threaten inmates into submission;" and (2) "[a]s of April 2020, the State knew that [Defendant] Vargas had engaged in unlawful sexual conduct by touching an inmate's breast and buttocks on at least two occasions" and Plaintiff's own alleged assault "involved the same sort of conduct." (Doc. 125 at 8-9).

Plaintiff further argues that "[t]he State does not get to immunize itself by claiming that the April 2020 incident was 'unsubstantiated'" because "[b]y this logic, a third victim could come forward and report [Defendant] Vargas for sexual misconduct, and the State would still claim it had no knowledge of his propensity because all the prior complaints against him were 'unsubstantiated.'" (Doc. 125 at 9). Plaintiff also includes a legislative intent argument, claiming that "[t]he legislature did not intend for the State to be able to shield itself from liability by simply turning a blind eye to staff sexual misconduct or labeling misconduct 'unsubstantiated' or 'unfounded.'" (Doc. 125 at 9). Plaintiff concludes that "[b]ecause there are ample facts from which a jury could conclude that the State was, in fact, aware of [Defendant] Vargas' propensity and that the State should have 'anticipate[d] an eventual assault', . . . summary judgment should be denied." (Doc. 125 at 9 (internal citation omitted)).

### 2. Analysis

"Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

Here, summary judgment is improper because divergent ultimate inferences

regarding propensity may reasonably be drawn from the undisputed facts. In drawing inferences in Plaintiff's favor, the Court cannot conclude that no reasonable juror could agree with Plaintiff's theory of propensity. A reasonable juror could conclude that, taken together, an incident in which Defendant Vargas allegedly retaliated against an inmate who reported a fellow officer for sexual assault, followed by a report that Defendant Vargas himself had sexually assaulted an inmate, shows that Defendant Vargas had a propensity for sexual exploitation and/or sexual harassment. Thus, whether these incidents constitute "propensity" such that the State is not immune is a genuine issue of material fact for the jury, and the State will not be granted summary judgment on this basis.

### ii.  Vicarious Liability

Alternatively, the State argues summary judgment should be granted because "the State cannot be vicariously liable for any alleged sexual assault by [Defendant] Vargas because sexual assault is outside the course and scope of a detention officer's employment as a matter of law." (Doc. 111 at 5).

Under *respondeat superior*, an employer in Arizona is vicariously liable for the behavior of an employee only when the employee acts within the course and scope of their employment. *Smith v. Am. Express Travel Related Serv. Co.*, 876 P.2d 1166, 1170 (Ariz. Ct. App. 1994). An employee acts within the course and scope of their employment if their conduct is "of the kind the employee is employed to perform, it occurs substantially within the authorized time and space limit, and it is actuated at least in part by a purpose to serve the [employer]." *Id.*; *see also Ray Korte Chevrolet v. Simmons*, 571 P.2d 699, 704 (Ariz. Ct. App. 1977) ("[A]n employee is acting within the scope of [their] employment while [they are] doing any reasonable thing which [their] employment expressly or impliedly authorizes [them] to do or which may reasonably be said to have been contemplated by that employment as necessarily or probably incidental to the employment.").

Here, both of the parties cite numerous cases to support their respective arguments, including a number of cases from other jurisdictions. The Court finds *State, Dep't of Admin. v. Schallock*, 941 P.2d 1275 (Ariz. 1997), cited by both of the parties, to be most

instructive. In *Schallock*, the defendant, a supervisor, was accused of sexual misconduct against his subordinates. *Id.* at 1282. The court was faced with the question of whether conduct not expressly authorized was nonetheless so "incidental" to employment that it was within the course and scope of employment. *Id.*

The *Schallock* court considered how the "improper acts took place at . . . [the] office or a related location . . . and were within or incidental to business hours or sessions." *Id.* The court also considered how the employer "was aware for close to a decade" of the employee-supervisor's improper conduct. *Id.* The court found that a jury could infer that the acts were authorized and in the scope of employment because "the employer permitted them to occur and recur over a long period at its place of business and during business hours." *Id.* at 1282-83.

This Court now faces the question of whether there is a genuine dispute as to whether Defendant Vargas' conduct, while not expressly authorized, was nonetheless within his scope of employment. Like the defendant in *Schallock*, Defendant Vargas has supervisory authority[9] over inmates and is accused of sexual misconduct against an inmate. The two prior "incidents," and this incident, all took place at the prison, in areas where Defendant Vargas was assigned to work, during Defendant Vargas' assigned shifts. As discussed above, a jury could determine that Defendant Vargas had a propensity for this type of conduct and that the State was aware of such a propensity. Thus, a jury could determine that the acts were in the scope of Defendant Vargas' employment. Accordingly, the Court will not grant summary judgment on this basis.[10]

### b. Count Two: Retaliation/Wrongful Detention

In Count Two, Plaintiff asserts claims of retaliation and wrongful detention "based on then-Director Shinn's revocation of Plaintiff's early release date in retaliation for her report of sexual assault." (Doc. 1-4 at 9; Doc. 125 at 12). Plaintiff classifies these claims

[9] "As a correctional officer, [Defendant] Vargas had the authority to supervise inmates, control their movement within the prison, and summon (or deny) medical aid." (Doc. 125 at 11).

[10] Because the Court does not grant summary judgment regarding the scope of employment issue, the Court does not reach Plaintiff's alternative argument regarding the State's "non-delegable duty for the care, custody, and control of its inmates." (Doc. 125 at 11).

1    as "state law torts"[11] but does not reference any state law. (Doc. 1-4 at 9). The State claims

2    that "[t]here is no state law claim for 'wrongful detention' when an inmate is required to

3    serve her court-imposed sentence." (Doc. 111 at 7). Plaintiff fails to respond to this point

4    and Plaintiff's response, like the complaint, is void of reference to any statute or caselaw.

5    (Doc. 125 at 12). The Court agrees with the State: the facts do not establish the elements

6    of any state law tort claim that the Court could find.

7        The State hypothesizes that Plaintiff may be trying to bring a claim under Arizona

8    Revised Statute § 31-281, which "provides for a Transition Release program (commonly

9    known as 'Early Release') for those inmates who are eligible." (Doc. 111 at 7). However,

10    regardless of whether Plaintiff's release date was changed based on department protocol or

11    at the discretion of Director Shinn, A.R.S. § 31-281 does not provide Plaintiff with a "right"

12    to early release such that Plaintiff can state a cause of action for "retaliation" or "wrongful

13    detention" based on the revocation of such early release. Without any legal basis for a

14    claim, no reasonable juror could find in Plaintiff's favor. Therefore, the Court will grant

15    summary judgment on Count Two to the State Defendant.

16        **c.  Count Three: Federal Civil Rights Claims under 42 U.S.C. § 1983**

17        In Count Three, Plaintiff asserts various claims under 42 U.S.C. § 1983 against both

18    Defendant Shinn and Defendant Vargas.[12] (Doc 1-4 at 9-10). Defendant Vargas did not

19    move for summary judgment. Thus, here, the Court only considers the claims against

20    Defendant Shinn in his individual capacity.[13] In Count Three, Plaintiff "asserts a § 1983

21    claim . . . for [Defendant Shinn's] violation of Plaintiff's First and Eighth Amendment

22    rights."[14] (Doc. 125 at 13; Doc. 1-4 at 9-10).

---

23    [11] Similar to Count One, because this count arises out of "state law tort," this count runs
24    only against the State of Arizona.
     [12] Plaintiff makes clear that Count Three does not include "any § 1983 claim against the
25    State" nor any "assert[ion] that the State, Shinn, or Thornell are 'vicariously liable' under
     federal law." (Doc. 125 at 13).
26    [13] The Court automatically substituted Defendant Shinn's successor, Ryan Thornell, as a
     defendant in his *official* capacity. *See supra* n.1. However, here, the claim must be against
27    Defendant Shinn in his *individual* capacity because Defendant Shinn, as a state official
     acting in an *official* capacity, is not a "person" under § 1983. *See Will v. Michigan Dep't
28    of State Police*, 491 U.S. 58, 71 (1989). "Plaintiff . . . does not object to the dismissal of
     Defendant Thornell in his *official* capacity." (Doc. 125 at 13 (emphasis added)).
     [14] It appears that Plaintiff's Fourteenth Amendment claim is exclusively against Defendant

### i. First Amendment Retaliation Claim

The parties agree that "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff argues that "Defendant Shinn revoked her early release because she engaged in the protected First Amendment activity of reporting [Defendant] Vargas' sexual abuse." (Doc. 125 at 13). Before the assault, [Plaintiff] had been informed that she would be released in October 2021." (Doc. 126 at 9 ¶ 66 (citing Exhibit C, sealed)). Twenty-three days after Plaintiff reported the assault,[15] Plaintiff "was informed that her early release was denied and that her release date was changed to April 5, 2022." (Doc. 126 at 9 ¶ 67 (citing Exhibit C, sealed)). "In Plaintiff's case, Plaintiff's son was the victim of Plaintiff's crime. The son's father, his legal representative, strenuously objected to Plaintiff's early release." (Doc. 138 at 3 ¶ 10 (citing Exhibit F)).

Defendant Shinn argues that summary judgment is appropriate because Plaintiff failed to show evidence that Plaintiff was denied early release *because of* her report. (Doc. 111 at 8). Rather, Defendant Shinn states "the record is undisputed that Plaintiff's early release was denied because of the victim's strenuous objection." (Doc. 111 at 8). Defendant Shinn also states that Plaintiff failed to show evidence to establish the fifth element of this claim because denying early release based on the victim's objection "advanced a legitimate correctional goal." (Doc. 111 at 8). Alternatively, Defendant Shinn argues that Plaintiff cannot establish this claim because "Director Shinn was not [] personally involved in [the denial] decision" because it was "Deputy Director Strada who signed the denial." (Doc.

---

Vargas as Plaintiff's response does not address a Fourteenth Amendment claim against Defendant Shinn. *See* Doc. 133 at 9 ("Plaintiff does not address, and thus apparently concedes, Defendants' motion on her Fourteenth Amendment claim.").

[15] Plaintiff reported the assault on August 23, 2021. (Doc. 126 at 6 ¶ 53 (citing Exhibit L, sealed)). Plaintiff was informed that her early release had been revoked on September 15, 2021. (Doc. 126 at 9 ¶ 67 (citing Exhibit C, sealed)).

111 at 8).

Defendant Shinn provides a declaration from Herb Haley, an ADCRR "Time Computation Unit Administrator," who says that the "decision to grant an inmate early release is a discretionary decision based on a number of factors," and "[t]he Department's protocol is to honor a victim's request to deny early release." (Doc. 138-1 at 75). Mr. Haley states that Plaintiff's "early release was denied by Deputy Director Frank Strada . . . for the sole reason that [Plaintiff's ex-husband] strenuously objected based on trauma to their son." (Doc. 138-1 at 75).

Plaintiff responds that the fact that early release was "revoked" weeks after she reported the assault "strongly suggests" that the revocation was *because of* her report. (Doc. 125 at 13). Plaintiff states prison staff did not tell her "why" early release was revoked, but "did tell her that . . . [it] was at the sole discretion of Defendant Shinn." (Doc. 125 at 14). Plaintiff did not learn that her early release was revoked because of her ex-husband's objection until defense counsel told her during her deposition. (Doc. 126 at 9 ¶ 71 (citing Exhibit C, sealed)). Finally, Plaintiff cites *Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003) for the proposition that motive and intent can turn a seemingly legitimate correctional goal into an illegitimate one.

The Court will not grant summary judgment to Defendant Shinn on this claim. Although Defendant Shinn maintains that "the record is undisputed that Plaintiff's early release was denied because of the victim's strenuous objection," the Court finds that the record is disputed regarding this issue. First, the fact that Deputy Director Strada, and not Defendant Shinn, signed the denial of early release does not justify summary judgment for Defendant Shinn. Construing the facts in Plaintiff's favor, Plaintiff claims Defendant Shinn was the decision maker. While defense counsel argues otherwise in the Motion, Defendant Shinn failed to provide evidence to establish this fact. For example, there is no affidavit from Defendant Shinn disavowing any involvement. There is no affidavit from Deputy Director Strada avowing that Defendant Shinn was not involved or that all discretion had been delegated to Strada.

Second, Mr. Haley's affidavit does not justify summary judgment. Mr. Haley says he is merely "familiar" with the sentencing documents related to Plaintiff and that the "sole reason" Plaintiff's early release was denied *by Deputy Director Strada* was because of Plaintiff's ex-husband's objection.[16] But it is unclear what role Mr. Haley played in Plaintiff's release and unclear how Mr. Haley would know the "sole reason" for the change in Plaintiff's release date—a decision that, by Mr. Haley's words, was "discretionary" and "based on many factors." Additionally, based on the Court's reading of the ADCRR Department Order Manual, while the ADCRR is required to provide a victim with notice and an opportunity to be heard, there is nothing that *requires* the ADCRR to honor a victim's objection beyond the seemingly unofficial "Department protocol," referenced by Mr. Haley without citation.

Finally, because the evidence Defendant Shinn provided does not include any dates—such as the date of the victim's objection, or the date that Plaintiff's sentencing documents might have been "audited" or what triggered such an audit—the Court cannot say that Plaintiff's early release was indisputably denied based solely on victim objection and not some other retaliatory reason. Similarly, there is a disputed issue of fact as to when and whether Plaintiff was notified that her early release was revoked due to victim objection. This dispute further calls into question the exact timeline, which Defendant Shinn has failed to establish as a matter of law.[17] The facts, viewed in the light most favorable to Plaintiff, could suggest that Defendant Shinn instructed Deputy Director Strada to revoke Plaintiff's early release date because Plaintiff reported this assault, which chilled Plaintiff's exercise of her First Amendment right and did not reasonably advance a legitimate correctional goal. Without evidence to support Defendant Shinn's argument, Defendant has failed to establish that he is entitled to summary judgment. However, the ultimate burden to establish that Defendant Shinn was personally involved remains

---

[16] There is also a dispute as to whether Plaintiff's son, who was the victim of the crime and had turned 18 during Plaintiff's incarceration, actually objected to Plaintiff's release. *See* Doc. 126, at 9 ¶¶ 70, 71 (citing Exhibit C, sealed).

[17] There is a disputed issue of fact as to Defendant Shinn's argument that revoking Plaintiff's early release advanced a legitimate correctional goal because of the issues discussed above.

1    Plaintiff's at trial.

2                              **ii.  Eighth Amendment Claim**

3         "A prison official's 'deliberate indifference' to a substantial risk of serious harm to

4    an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

5    A prison official is "deliberately indifferent" if "the official knows of and disregards an

6    excessive risk to inmate health or safety." *Id.* at 837. "[T]he official must both be aware of

7    facts from which the inference could be drawn that a substantial risk of serious harm exists,

8    and he must also draw the inference." *Id.*

9         In determining whether a prison official has the requisite level of knowledge, a court

10   may consider "inference[s] from circumstantial evidence" and whether "the risk was

11   obvious." *Id.* at 843. A prison official may not escape liability "by showing that, while he

12   was aware of an obvious, substantial risk to inmate safety, he did not know that the

13   complainant was especially likely to be assaulted by the specific [individual] who

14   committed the assault." *Id.* at 843.

15        Defendant Shinn, as a supervisory official, may be liable under § 1983 for

16   Defendant Vargas' conduct only if (1) Defendant Shinn had "personal involvement in the

17   constitutional deprivation, or (2) there is a sufficient causal connection between [Defendant

18   Shinn's] wrongful conduct and [Defendant Vargas'] constitutional violation." *Hansen v.*

19   *Black*, 885 F.2d 642, 646 (9th Cir. 1989). "Under the latter theory, '[s]upervisory liability

20   exists even without overt personal participation in the offensive act if supervisory officials

21   implement a policy so deficient that the policy itself is a repudiation of constitutional rights

22   and is the moving force of a constitutional violation.'" *Crowley v. Bannister*, 734 F.3d 967,

23   977 (9th Cir. 2013) (quoting *Hansen*, 885 F.2d at 645-46). A plaintiff must point to "a

24   *specific* policy implemented by the Defendants or a *specific* event . . . instigated by the

25   Defendants" that led to the constitutional deprivation. *Hydrick v. Hunter*, 669 F.3d 937,

26   942 (9th Cir. 2012) (emphasis in original).

27        Plaintiff does not argue that Defendant Shinn was personally involved in depriving

28   Plaintiff of her Eighth Amendment rights, but rather argues that "a reasonable jury [could]

conclude that Defendant Shinn implemented constitutionally deficient policies for investigating and handling inmates' reports of sexual abuse and that those policies were the moving force behind the deprivation of Plaintiff's rights."[18] (Doc. 125 at 15). Plaintiff's "expert identified several systemic deficiencies in ADC[RR]'s handling reports of sexual misconduct between 2016 and 2022."[19] (Doc 125 at 15). To support this argument, Plaintiff cites Exhibits M and N. (Doc. 125 at 15-16). Defendants contend that these exhibits are inadmissible because "the record lacks any evidence of [the expert's] qualifications or expertise, and the document . . . is unauthenticated, lacks foundation, and is hearsay." (Doc. 133 at 8).

Upon review, Exhibit M appears to be an incomplete copy of an unnamed, unsigned document. (Doc. 136 at 94-103 (sealed)). Plaintiff elsewhere refers to Exhibit M as the "Layman Report," but this title is not indicated in the actual exhibit. (*See, e.g.,* Doc 126 at 8 ¶ 64). Although a 49-page report is referenced, the exhibit contains only nine pages.[20] The exhibit does not include any of the referenced appendixes.

Exhibit N is an "addendum" to a "original assessment report."[21] (Doc. 136 at 104-120 (sealed)). Exhibit N is signed by Elizabeth Layman. (Doc. 136 at 120 (sealed)).

---

[18] In the Motion, Defendants discuss Plaintiff's Eighth Amendment claim in terms of the issue of early release. (Doc. 111 at 8). Plaintiff's response makes clear that Plaintiff's Eighth Amendment claim against Defendant Shinn is not about early release, but is with regard to constitutionally deficient policies he may have implemented. (Doc. 125 at 14-16). Defendants responded to this argument in their Reply. (Doc. 133 at 8).

[19] The deficiencies identified by Plaintiff's expert are as follows:
a. The failure to conduct an administrative investigation following any inmate's report of staff sexual misconduct, which is a violation of ADC policy and PREA standards;
b. The failure to provide investigators with adequate and PREA-compliant training on sexual misconduct investigations;
c. A pattern of investigator bias against inmates;
d. An excessively high rate of "unsubstantiated" reports, even in cases where investigators documented clear evidence sufficient evidence [sic] to support a finding of "substantiated"; and
e. The failure to maintain annual data on sexual abuse and harassment of inmates, which is required by federal law and without which ADC cannot address the quality of investigations or methods to prevent and deter future misconduct.
(Doc. 126 at 8 ¶ 65 (citing Exhibits M and N, sealed)).

[20] The exhibit includes pages 17-18, 29-30, 36-38, 42, and 46.

[21] It appears the original report—which the Court assumes is included, at least in part, in Exhibit M—"was based on the 'PREA Face Sheet' which is a short summary of the case" and Exhibit N, the addendum, is based on "the entire investigative file." (Doc 136 at 120, sealed).

1    Plaintiff elsewhere describes Ms. Layman as a "PREA and investigative practices expert"

2    but provides no other evidence regarding what qualifies Ms. Layman to be such an expert.

3    (Doc. 126 at 7 ¶ 59 (citing Exhibits M and N, sealed)).

4       Exhibit G is pages 115 and 116 from Ms. Layman's deposition. (Doc. 126-1 at 24-

5    25). Plaintiff cites the deposition for the proposition that "PREA requires both criminal and

6    administrative investigations." (Doc. 126 at 4 ¶ 27 (citing Exhibits G and F)). The excerpt

7    does not shed any additional light on Ms. Layman's expert qualifications, the report, or the

8    addendum.

9       The question is whether the Court can rely on these exhibits to resolve the pending

10    Motion. The Ninth Circuit applies a double standard to the admissibility requirement for

11    evidence at the summary judgment stage. *See* 10B Charles Alan Wright, Arthur R. Miller

12    & Mary Kay Kane, Federal Practice & Procedure § 2738 (3d ed. 1998). With respect to a

13    non-movant's evidence offered in opposition to a motion for summary judgment, the Ninth

14    Circuit has stated that the proper inquiry is not the admissibility of the evidence's *form* but

15    rather whether the *contents* of the evidence are admissible. *Fraser v. Goodale*, 342 F.3d

16    1032, 1036 (9th Cir. 2003); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the

17    material cited to support or dispute a fact cannot be presented in a form that would be

18    admissible in evidence."); *Celotex*, 477 U.S. 317, 324 (1986) ("We do not mean that the

19    nonmoving party must produce evidence in a form that would be admissible at trial in order

20    to avoid summary judgment.").

21       The Court finds Exhibits M and N inadmissible for multiple reasons. First, the

22    exhibits are unauthenticated. The Ninth Circuit has "repeatedly held that unauthenticated

23    documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am.*,

24    NT & SA, 285 F.3d 764 (9th Cir. 2002). A document is authenticated if there is "evidence

25    sufficient to support a finding that the matter in question is what its proponent claims."

26    Fed. R. Evid. 901(a). Exhibit M is missing Ms. Layman's name and signature. Exhibit N

27    has a signature, but no title for Ms. Layman or any other information about Ms. Layman.

28    Plaintiff offers no other evidence to support a finding that the exhibits are what Plaintiff

claims they are.

Second, the exhibits are unsworn and "[c]ourts in this circuit have routinely held that unsworn expert reports are inadmissible." *Harris v. Extendicare Homes, Inc.*, 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011); *see also Reed v. NBTY, Inc.*, No. EDCV130142JGBOPX, 2014 WL 12284044, at *4 (C.D. Cal. Nov. 18, 2014) (collecting cases); *King Tuna, Inc. v. Anova Food, Inc.*, No. 07-7451-ODW, 2009 WL 650732, at *1 (C.D. Cal. Mar. 10, 2009) ("It is well-settled that under Fed. R. Civ. P. 56(e), unsworn expert reports are not admissible to support *or oppose* summary judgment" and "to be competent summary judgment evidence, an expert report must be sworn to or otherwise verified, usually by a deposition or affidavit" (emphasis added)). Plaintiff has not submitted any affidavit indicating the statements contained in Exhibits M or N were made under the penalty of perjury.

Third, Plaintiff also has not offered the documents on which Ms. Layman relied on in drafting either the report or the addendum. *See* Fed. R. Civ. P. 56(c); *Harris*, 829 F. Supp. 2d at 1027 ("The [expert] reports are also inadmissible because they fail to attach copies of the documents to which they refer. . . . The Court will not simply assume that the experts have accurately quoted or characterized those documents.").

Finally, the contents of Exhibits M and N are admissible at trial only if Plaintiff complied with Federal Rule of Civil Procedure 26, and it is not clear she has. Under Federal Rule of Civil Procedure 26(a)(2)(B), if a witness "is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," their report must include the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). If Plaintiff "fail[ed] to provide information . . . as required by Rule 26(a) . . . [Plaintiff] is not allowed to use that information . . . at a trial, unless the

1  failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

2          Plaintiff provided an addendum and a portion of an unnamed document. This is not

3  a complete statement of the opinions Ms. Layman will express and, as discussed, Plaintiff

4  does not provide the supporting documents that form the basis of Ms. Layman's opinions.[22]

5  The Court also could not find any of the following: a list of Ms. Layman's qualifications;

6  a list of any publications Ms. Layman authored in the previous 10 years; a list of all other

7  cases in which, during the previous four years, Ms. Layman testified as an expert at trial or

8  by deposition; or a statement of the compensation Ms. Layman was paid for the report (or

9  addendum). Because Plaintiff has not provided evidence that goes toward whether Ms.

10  Layman meets the requirements for expert witnesses under Federal Rule of Evidence

11  26(a)(2)(B), the Court cannot determine whether the contents of the exhibits could be in an

12  admissible form at trial.[23] The Court therefore finds Exhibits M and N inadmissible and

13  does not consider them here. Because Plaintiff offers no other evidence for this claim, a

14  reasonable juror could not find in Plaintiff's favor on this claim. Therefore, the Court finds

15  it proper to enter summary judgment on the Eighth Amendment claim against Defendant

16  Shinn.

17                    **d.  Punitive Damages**

18          Plaintiff seeks "punitive damages under § 1983 against Defendant Shinn."[24] (Doc.

19  125 at 16). Defendants assert that Plaintiff is not entitled to punitive damages against

20  Defendant Shinn because Plaintiff did not show "that Director Shinn did anything in his

21  individual capacity [in] this case," (Doc. 111 at 9), and because Plaintiff did not provide

22  evidence of Defendant Shinn's state of mind, (Doc. 133 at 9-10).

23          The Court did not grant summary judgment on Plaintiff's claim alleging First

24  Amendment retaliation arising out of Defendant Shinn's alleged "revoking" of Plaintiff's

25  _____

[22] The Court cannot say that Plaintiff provided even a portion of the original report because

26  Exhibit M is not titled and is not signed by Ms. Layman.
[23] These rulings have no bearing on whether the complete report might actually be

27  presented in an admissible format at trial. They are merely rulings on the Court's
consideration of the unauthenticated excerpts of the report submitted with the Plaintiff's

28  response to the motion for summary judgment.
[24] "Plaintiff has not asserted a claim for punitive damages against the State or against
Defendant Shinn on her state law claims." (Doc. 125 at 16).

early release. Thus, there is still a question of whether Plaintiff is entitled to punitive damages against Defendant Shinn in his individual capacity for this § 1983 claim. Whether punitive damages are warranted is, generally, an issue reserved for the jury. *See Pacific Mut. Life Ins. Co. v. Haslip*, 111 U.S. 1, 16 (1991) (noting that, with respect to punitive damages, "[t]his has been always left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case") (quotation omitted); *Smith v. Wade*, 461 U.S. 30, 48, 54, 56 (1983) ("[P]unitive damages are awarded in the jury's discretion"). A jury may assess punitive damages in a § 1983 action when a defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 56. In this case, it is up to the jury to decide whether Defendant Shinn's conduct was motivated by evil motive or intent, or if it involved reckless or callous indifference to Plaintiff's federally protected rights. Defendant Shinn is not entitled to summary judgment on the issue of punitive damages.

### e.  Future Medical Expenses

Defendants, including Defendant Vargas who joined this part of Defendants' Reply, (Doc. 134), seek summary judgment on any claims by Plaintiff for future medical expenses.[25] Plaintiff's basis for future medical claims is a psychological evaluation of Plaintiff completed by a licensed clinical psychologist ("LCP"). (Doc. 126 at 11 ¶ 83 (citing Exhibit D, sealed)). The LCP provided recommendations regarding future care needs to "address and treat [Plaintiff's] psychological injuries." (Doc. 126 at 12 ¶ 89 (citing Exhibit D, sealed)). Defendants claim that this evaluation is "insufficient to allow the jury to award the cost of future medical treatment" because (1) the recommendations do not include anticipated costs and are not backed by an expert economist or life care planner; (2) the recommendations are "speculative" because they are "recommendations" and not "necessary treatments" that are "reasonably probable" to occur; and (3) some

---

[25] Defendants do not argue that summary judgment on this case as a whole is justified due to a lack of damages, rather, Defendants only seek partial summary judgment that Plaintiff cannot recover future medical expenses. In other words, Defendants do not seek summary judgment on Plaintiff's compensatory and/or general damages theories.

recommendations are beyond the LCP's expertise. (Doc. 111 at 9-10).

Plaintiff counters by arguing that the psychological evaluation "is sufficient evidence for the jury to find a reasonable probability that Plaintiff will incur future treatment." (Doc. 125 at 16). Plaintiff finds "misplaced" Defendants' critique that the evaluator "used the word 'recommended' rather than 'reasonably probable'" and states that the evaluator was not "required to provide specific opinions on the cost of future treatment." (Doc. 125 at 17).

To prevail on summary judgment on future medical expenses, Defendants must establish that Plaintiff has not shown that "the need for future care [is] reasonably probable" and has not presented "some evidence of the probable nature and cost of the future treatment." *Saide v. Stanton*, 659 P.2d 35, 36 (Ariz. 1983). "Whether future medical expenses are reasonably probable or certain is determined 'from all the relevant circumstances which are before the court.'" *Id.* at 37 (quoting *Besch v. Triplett*, 532 P.2d 532, 878 (Ariz. Ct. App. 1975)). "The use or refusal of an expert to use a 'magic word' or phrase such as 'probability' is not determinative. The trier of fact is allowed to determine probability or lack thereof if the evidence, taken as a whole, is sufficient to warrant such a conclusion." *Id.* "As long as the evidence as a whole will support a finding that the future treatments are reasonably probable," the issue should be submitted to the jury. *Id.* at 38. "[T]he amount of damages may be established with proof of a lesser degree of certainty than required to establish the fact of damages." *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 680 P.2d 1235, 1245 (Ariz. Ct. App. 1984).

Here, Plaintiff has provided recommendations from an LCP. The LCP provided the recommendations after conducting an in-depth psychological evaluation of Plaintiff. The recommendations include the following: (1) an intensive outpatient or residential program; (2) individual psychotherapy; (3) group therapy; (4) family therapy; (5) couples therapy; and (6) treatment from a physician for nerve pain and recovery medical treatment. (Doc. 126 at 12 ¶¶ 89-91 (citing Exhibits E and D, sealed)). Many of the recommendations are time-boxed, i.e., "with services occurring 3-5 days per week for 4-5 hours per day for

approximately 6 months or until early [] remission occurs." (Doc. 136 at 69, sealed). Although these are termed "recommendations," they are more than mere "suggestions." *Cf. Hall v. Eads*, No. CV-16-03855-PHX-JJT, 2018 WL 3575828, at *2 (D. Ariz. July 25, 2018) (finding plaintiff did not establish future damages where doctor said plaintiff "*might* require [treatment] . . . *possibly* followed by [additional treatment] . . . *perhaps* annually over the next 2-3 years.") (emphasis in original).

Finally, although it does appear Plaintiff has not provided a computation of the amount of future medical expense damages, on this record, the Court cannot conclude that Defendants are entitled to summary judgment that Plaintiff cannot show an entitlement to future medical expenses.[26] There is expert testimony to support that Plaintiff will need future counseling. And, Plaintiff herself can testify as to what her current counseling bills are on a weekly or monthly basis. There is further expert testimony as to how long this treatment is projected to continue. While this is not the ideal, detailed damages calculation envisioned by Federal Rule of Civil Procedure 26, it is enough to preclude summary judgment in Defendants' favor on all future medical expenses. The Court will deny Defendants' Motion in this regard, but with the caveat that this conclusion is without prejudice to Defendants raising this issue in the future.[27]

### f.  Objections to Plaintiff's Facts and Exhibits

In their Reply, Defendants—including Defendant Vargas, who joined this part of the Reply—list evidentiary objections to Plaintiff's exhibits and facts. (Doc. 133 at 11).

"[O]bjections for relevance are generally unnecessary on summary judgment

---

[26] *See O'Boyle v. Costco Wholesale Corp.*, No. CV 19-04938-PHX-MHB, 2021 WL 9080008, at *3 (D. Ariz. Aug. 3, 2021) ("While it does appear that Plaintiff has failed to properly disclose . . . a computation of future care damages . . . , the Court cannot conclude, without the context of testimony and evidence as developed through trial, that Plaintiff's future care damages should be excluded at this time.").

[27] Defendants are not precluded from moving *in limine*, or under *Daubert*, to preclude testimony about a particular item of damages if legally or factually appropriate. Defendants may also object at trial. Defendants may also make a Federal Rule of Civil Procedure 50(a) motion at the end of trial if Defendants believe Plaintiff has not established future care damages. *See O'Boyle*, No. CV 19-04938-PHX-MHB, 2021 WL 9080008, at *3 (denying defendant's motion for summary judgment but advising defendant that it could make a Rule 50(a) motion at the end of plaintiff's case if defendant "believe[d] that [p]laintiff [did not meet] one or more of the requirements of establishing liability or the elements required to establish future care damages.").

because they are 'duplicative of the summary judgment standard itself.'" *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)). Objections that evidence "constitutes an improper legal conclusion" are also duplicative. *Equal Emp. Opportunity Comm'n v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005, 1016 (D. Ariz. 2013) (quoting *Harris Technical Sales, Inc. v. Eagle Test Sys., Inc.*, 06-02471-PHX-RCB, 2008 WL 343260 at *3 (D. Ariz. Feb. 5, 2008)). The Court will not consider Defendants' duplicative objections at the summary judgment stage.

A court will not sustain a hearsay objection at the summary judgment stage "[i]f the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document." *Sandoval*, 985 at 666 (citing *Fraser*, 342 F.3d at 1036-37). "[T]he mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.* With the exception of Exhibits M and N, which are addressed above, the exhibits Defendants object to as hearsay[28] "either reflect the personal knowledge of individuals who could be called to testify at trial or will likely be admissible at trial under exceptions to the hearsay rule." *Sandoval*, 985 F.3d at 666. For example, the content of the copies of the criminal investigative reports stemming from the October 2019 and April 2020 incidents could come in by the reporting investigator testifying about what they expressed in the report. The same is true for Defendants' hearsay objections to paragraphs of Plaintiff's asserted controverting facts. Finally, the Court did not find persuasive any of Defendants' other one-word objections. Accordingly, Defendants' evidentiary objections are overruled without prejudice to raise any appropriate objections at trial.

## IV.    CONCLUSION

**ACCORDINGLY,**

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Doc. 111.

---

[28] The Ninth Circuit disfavors one-word, unexplained, generalized hearsay objections. *See Sandoval*, 985 F.3d 657, 666.

1    **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment

2    (Doc. 111) is **GRANTED in part** and **DENIED in part.** Summary judgment is denied on

3    Count One against the State of Arizona. Summary judgment is granted to the State of

4    Arizona on Count Two. Summary judgment is granted to Defendant Shinn on Plaintiff's

5    Eighth Amendment claim in Count Three but is denied as to Plaintiff's First Amendment

6    claim.[29]

7    **IT IS FURTHER ORDERED** that Defendants are not entitled to summary

8    judgment on any claims for punitive damages or any claims for future medical expenses.

9    **IT IS FURTHER ORDERED** that this Order shall be temporarily sealed pending

10    counsel reviewing the Order, which cites to limited sealed documents, and filing a joint

11    motion to seal which must attach a redacted version of the Order, redacting only those

12    portions of the Order that counsel can show compelling reasons to seal. The Court notes

13    that the exhibits currently under seal were permitted to be filed under seal by the Magistrate

14    Judge, not the undersigned. The undersigned seriously questions whether those exhibits

15    should have been sealed at all, and certainly not in their entirety. If no joint motion to seal

16    limited portions of this Order is filed within 14 days of this Order, this Court will file this

17    Order completely unsealed and unredacted. Counsel are reminded that any motion to seal

18    must make a compelling reason showing for each sentence of this Order that it seeks to

19    redact in the version of this Order that will be filed on the public docket. *See Kamakana v.*

20    *City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006).

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    ---

[29] The Court notes that Plaintiff has conceded that her Fourteenth Amendment claim is against only Defendant Vargas.

**IT IS FINALLY ORDERED** that Defendant Thornell is dismissed.

Dated this 2nd day of January, 2025.

James A. Teilborg
Senior United States District Judge

Copies to only:

Counsel for Plaintiff and Defendants